**Dan Ervin MEADOR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Donald Ray UTZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 13–95–231–CR, 13–95–545–CR.**

Court of Appeals of Texas,
Corpus Christi.

Aug. 29, 1996.

Discretionary Review Refused Jan. 29, 1997.

Charles A. Hood, Port Lavaca, for appellant.

Robert E. Bell, Criminal District Attorney, Edna, for appellee.

Before FEDERICO G. HINOJOSA, Jr., YAÑEZ and KENNEDY, JJ.[1]

1. Retired Justice Noah Kennedy, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1988).

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

After a consolidated trial, a jury found appellants, Dan Ervin Meador and Donald Ray Utz, guilty of possession of cocaine in the amount of less than 28 grams. The trial court assessed punishment for each appellant at sixteen years' confinement. We granted appellants' requests that both appeals be considered at the same time. Appellants challenge their convictions by five points of error. We affirm.

By their third point of error, appellants contend that the evidence is insufficient to support their convictions for possession of cocaine. Although appellants' brief appears to be limited to the traditional legal sufficiency challenge, during oral argument, appellants' counsel contended that appellants were really raising a factual sufficiency challenge as set forth in *Clewis v. State*, 922 S.W.2d 126, 133–34 (Tex.Crim.App.1996). Thus, we will review the evidence for both legal and factual sufficiency.

■ When we review a legal sufficiency of the evidence point of error, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Patrick v. State*, 906 S.W.2d 481, 486 (Tex.Crim.App.1995); *Turro v. State*, 867 S.W.2d 43, 46–47 (Tex.Crim.App.1993); *Arceneaux v. State*, 803 S.W.2d 267, 269 (Tex. Crim.App.1990). The standard is the same for both direct and circumstantial evidence cases. *Earhart v. State*, 823 S.W.2d 607, 616 (Tex.Crim.App.1991), *cert. denied*, 513 U.S. 966, 115 S.Ct. 431, 130 L.Ed.2d 344 (1994); *Sutherlin v. State*, 682 S.W.2d 546, 548–49 (Tex.Crim.App.1984); *Vela v. State*, 771 S.W.2d 659, 660 (Tex.App.—Corpus Christi 1989, pet. ref'd). We measure the legal sufficiency of the evidence against the indictment as incorporated into the jury charge. *Fisher v. State*, 887 S.W.2d 49, 55 (Tex.Crim.App. 1994); *Benson v. State*, 661 S.W.2d 708, 715

(Tex.Crim.App.1982) (opinion on rehearing), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984).

The jury charge authorized the jury to convict appellants if it found beyond a reasonable doubt that Meador and Utz possessed cocaine in the amount of less than 28 grams on or about November 24, 1992. The charge instructed the jury that Sandy Tristan and Maria Guzman were accomplice witnesses.

■■■ The testimony of an accomplice witness must be corroborated. TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979). In passing upon the sufficiency of the evidence, we must treat the testimony of an accomplice as that of an accomplice and find sufficient evidence from other sources tending to connect the defendant to the commission of the offense. *Hammonds v. State,* 166 Tex.Crim. 499, 316 S.W.2d 423, 424 (1958); *Hernandez v. State,* 907 S.W.2d 654, 655 (Tex.App.— Corpus Christi 1995, pet. granted). Accordingly, we must review the facts and determine whether the accomplice testimony is adequately corroborated. *Hernandez,* 907 S.W.2d at 655.

■■■ In order to weigh the sufficiency of corroborative evidence, we must eliminate from consideration the testimony of the accomplice witness and then examine the testimony of the other witnesses to ascertain if there is evidence which tends to connect the accused with the commission of the offense. *Cockrum v. State,* 758 S.W.2d 577, 581 (Tex. Crim.App.1988), *cert. denied,* 489 U.S. 1072, 109 S.Ct. 1358, 103 L.Ed.2d 825 (1989); *Reed v. State,* 744 S.W.2d 112, 125 (Tex.Crim.App. 1988). The combined cumulative weight of the incriminating evidence furnished by the non-accomplice witnesses may be sufficient if it tends to connect the accused to the offense. *Reed,* 744 S.W.2d at 126. It is not necessary that the corroboration directly link the accused to the crime or be sufficient in itself to establish guilt. *Id.* Proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction. *Id.* at 127.

The record shows non-accomplice testimony from John Barry Howard and Lieutenant Curt Gabrysch. Their testimony shows that in the early morning of November 22, 1992, Howard was arrested by sheriff's deputies from Jackson County for driving while intoxicated. He was subsequently convicted for DWI and for a burglary he committed just before his arrest. During his confession, Howard told Lieutenant Gabrysch and the other officers that he had been buying cocaine from Sandy Tristan. Howard agreed to cooperate with the officers. He then agreed to go to Tristan's residence for the purpose of purchasing cocaine.

Several initial attempts failed because Tristan claimed that she did not have any cocaine. On November 24, 1992, the officers decided to again attempt to buy cocaine from Tristan. Howard was searched before the attempt. Howard testified that when Tristan first allowed him into her home, she was not certain she wanted to deal with him because she believed he had been arrested for the burglary. Howard denied that he had been arrested, and Tristan threatened to shoot him if he set her up for an arrest. Tristan then sold him forty dollars worth of cocaine. Howard paid Tristan with bills marked by the officers.

As Howard was leaving, he saw Tristan hand twenty dollars worth of cocaine to Meador for delivery to "Maria." No last name was mentioned. As he left the house, Howard observed cocaine on Tristan's kitchen table. Howard and Meador left the house at the same time in separate vehicles. After leaving Tristan's house, Howard met with the officers and gave them the cocaine. The officers then obtained a search warrant for Sandy Tristan's residence.

Before the officers executed the warrant, they asked Howard to return to Tristan's home for another purchase. Howard testified that as he entered the house, he saw Meador and Utz sitting at the kitchen table. He also noted that the cocaine was still laying on the kitchen table. This time, Utz warned Howard that he had better not be working for the sheriff. Nevertheless, Howard was allowed to make a second purchase.

Just as the transaction was completed, Tristan's five and one-half year old daughter, Leona Tristan, came to the table. Utz injected himself with cocaine in the presence of Howard and the child. At the trial, Leona Tristan[2] testified that she saw Meador and Utz inject themselves with cocaine on that day.

Howard gave the officers the cocaine, told them who was present in the house, described where these people and the cocaine were located, and told them that Utz had injected himself with cocaine. When the warrant was served, Lieutenant Gabrysch found that Tristan, Meador, Utz, and the child were present as Howard had stated. He also observed a white powdery substance laying in plain view on the kitchen table. Subsequent tests by the Texas Department of Public Safety ("DPS") laboratory confirmed that the powder was cocaine. Although the officers did not find any hypodermic needles on the kitchen table, they did find some on top of and inside the refrigerator. Tristan told the officers that she used the hypodermic needles because she was a diabetic. The needles were neither confiscated as evidence nor tested for the presence of cocaine. Tristan, Meador, and Utz were arrested. Tristan tried to convince the officers that Utz and Meador were not involved with the cocaine. Neither Meador nor Utz had narcotics or drug paraphernalia on their persons at the time of the arrest. The men were never tested for drug use.

Sandy Tristan testified that John Barry Howard attempted to purchase cocaine at her house on four occasions but that only the last two, occurring on November 24, 1992, were successful. Howard purchased forty dollars worth of cocaine on those two occasions. Tristan explained that at the first sale, she believed Howard was cooperating with sheriff's officers, and that she then threatened to harm him if he had a part in her arrest. She also testified that Utz repeated this threat just before Howard made the second buy. Tristan testified that during Howard's first purchase, she gave Meador twenty dollars worth of cocaine and told him to deliver the drug to "Maria." According to

Tristan, Meador and Howard left at the same time. Meador later returned and gave her twenty dollars. Tristan then promised to give Meador cocaine for his assistance.

Sandy Tristan testified that during Howard's second purchase, Meador, Utz, and her daughter, Leona Tristan, were present. She also told the jury that Meador and Utz injected themselves with cocaine in front of Leona just before the officers arrived with the search and arrest warrant. Meador injected the cocaine that Tristan had promised him earlier in the day. Tristan told the officers that she was a diabetic and that all the needles in the house were hers. According to Tristan, the drugs that she sold to Howard, that she gave to Meador for delivery, and that were injected by Meador and Utz, came from the cocaine the officers found laying on the kitchen table at the time they executed the warrant. Nevertheless, Tristan admitted that she told the officers that Meador and Utz were not connected to the cocaine found on her kitchen table.

Guzman testified that she was the "Maria" to whom Meador delivered cocaine on November 24, 1992. She told the jury that she gave Meador twenty dollars for the cocaine. Guzman explained that she knew the substance Meador delivered to her was cocaine because when she used it later in the day, her body reacted as it always did to cocaine.

■ We hold that the non-accomplice witness testimony of Howard, Gabrysch, and Leona Tristan tends to connect the appellants to the offense of cocaine possession. Therefore, the testimony of Sandy Tristan and Maria Guzman may be included in our review of the evidence.

■ To be sufficient, evidence must affirmatively link a defendant with the drugs he allegedly possessed. *Brown v. State*, 911 S.W.2d 744, 748 (Tex.Crim.App.1995). In other words, evidence must establish beyond a reasonable doubt that the accused's connection with an illegal drug was more than just fortuitous by showing that the accused possessed the drug knowingly or intentionally. *Id.* at 747.

2. Leona was eight years old at the time of the trial.

■ Howard and Tristan testified that Meador took cocaine into his possession for delivery to "Maria." Maria Guzman testified that Meador did indeed deliver the drug and that he accepted twenty dollars in return. Tristan testified that when Meador returned from delivering the cocaine, he handed her the twenty dollars. She promised him cocaine for his help. Tristan and Leona testified that Meador and Utz injected themselves with cocaine immediately before they were arrested on November 24, 1992. Howard saw Utz inject himself with the drug and heard Utz threaten him if officers arrested Utz and the others because of information provided by Howard. Tristan testified that all of the cocaine at issue came from that laying on the kitchen table. We conclude that the above evidence is sufficient to affirmatively link Meador and Utz to the offense of cocaine possession.

We hold that any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. We hold that the evidence is legally sufficient to support appellants' convictions.

■ When we review a factual sufficiency of the evidence point of error, we review all of the evidence and set aside the verdict only if it is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Clewis,* 922 S.W.2d at 133–34.

William H. Atkins and Eleanor Meador also testified that they were contacted by Sandy Tristan some time after the arrest. Tristan told them that neither appellant was involved in the incident. Atkins and Eleanor Meador admitted, however, that Tristan was more likely to tell the truth under oath in the courtroom.

After reviewing all of the evidence, we conclude that the verdict is not so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. We hold that the evidence is factually sufficient to support appellants' convictions. We overrule appellants' third point of error.

By their first point of error, appellants complain that the trial court erred in denying them the use of all available peremptory strikes.

Appellants contend that the jury list given to trial counsel was misleading because there was a box drawn around the names of thirty-seven of the listed jurors. The list was on a printed form with numbered lines for thirty-seven names. However, ten additional jurors were listed outside the box. Counsel admitted that he erroneously assumed, without doing the math, that he only had to consider those jurors listed within the box. Appellants contend that because of the box, counsel only used eleven of the twelve strikes allowed them. When all the strikes and challenges were considered, two jurors from outside the box, numbers thirty-eight and thirty-nine, were seated on the panel. After the last juror was seated and before the panel was sworn or the remainder of the veniremen were dismissed, counsel alerted the trial court of appellants' desire to use their last strike on juror thirty-eight, Theresa Ellen Whitehead. The trial court refused to allow the strike, swore the jury, and dismissed the unused veniremen. Appellants' subsequent motion for mistrial was also denied.

■ If the court is notified of an error in seating the panel before the jury is sworn, and the error is not corrected, automatic reversal is required. *Pogue v. State,* 553 S.W.2d 368, 370–71 (Tex.Crim.App.1977). In the case before us, however, there is no error, only counsel's alleged mistake.

■ The record reflects that at the end of *voir dire,* and before the prosecutor and defense counsel made their peremptory strikes, the following occurred:

Prosecutor: That's all the people, Judge. Let's see. We've got one, two, three, four, five struck. We need 34, that means we need to go through only 39. So we need to go through 41, we need to go through 41.

The Court: We let 5 off?

Defense Counsel: Yes, Your Honor. Number 1, Number 2, Number 8, Number 12, and Number 13.

In addition, appellants point to nothing in the record other than the defendants' strike list, to verify their claim that, absent counsel's error, Juror Whitehead would have been stricken. There are no notations on this list

that indicate an intent to strike Whitehead should the need arise. To allow appellants to change their peremptory strikes by merely making an unsupported claim of mistake, after learning which veniremembers were struck by the State, would be inequitable. *See Jackson v. State*, 826 S.W.2d 751, 752 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd).

Moreover, appellants do not claim Whitehead was prejudiced and biased. Appellants only claim that Whitehead knew Lieutenant Gabrysch, that she was a teacher in the district where the prosecutor was on the school board, and that her brother was a DPS Trooper in Jackson County. Counsel took Whitehead on individual *voir dire.* Whitehead stated that she would not let her relationship with a State Trooper or her familiarity with a State witness and the prosecutor influence her opinion of appellants' guilt or innocence.

We hold that the trial court did not err in refusing to allow appellants to strike Juror Whitehead. We overrule appellants' first point of error.

By their second point of error, appellants contend that the trial court erred in overruling their objections to evidence of an extraneous offense. Specifically, appellants complain of evidence showing the delivery of cocaine by Meador to Maria Guzman discussed above. The State argues that evidence of the delivery proves Meador possessed part of the cocaine confiscated from Tristan's residence on November 24, 1992.

An extraneous offense is defined as any act of misconduct, whether resulting in prosecution or not, that is not shown in the charging papers. *Rankin v. State*, No. 1019–94, 1996 WL 6757, at *1, —— S.W.2d ——, —— (Tex.Crim.App. Jan.10, 1996); *Gomez v. State*, 626 S.W.2d 113, 114 (Tex.App.—Corpus Christi 1981, pet. ref'd).

Meador was indicted for possession of cocaine in the amount of less than 28 grams on or about November 24, 1992. The testimony that Meador delivered cocaine to Guzman shows that Meador knowingly and intentionally had control over part of the cocaine seized on November 24, 1992. Mea-

dor's possession of the cocaine up to the delivery and his receipt of twenty dollars from Guzman in exchange for the drug is clearly misconduct shown in the charging papers.

We hold that the testimony that Meador delivered cocaine to Guzman is not evidence of an extraneous offense. Accordingly, the trial court did not err in overruling appellants' objections. We overrule appellants' second point of error.

By their fourth point of error, appellants contend that the trial court erred in overruling their motion to suppress.

Claiming that their arrest was illegal, appellants filed a motion to suppress and requested a pre-trial hearing on the motion. The trial court refused appellants' request for a pre-trial hearing and did not rule on the motion to suppress.

The question of whether to hold a hearing on a motion to suppress is within the discretion of the trial court. *Calloway v. State*, 743 S.W.2d 645, 649 (Tex.Crim.App. 1988). The trial court may elect to determine the merits of the suppression motion during the trial, when and if the defendant has lodged the proper objection. *Id.* Even if the defendant specifically requests a pretrial hearing, no error is preserved if the court declines to hear the matter. *Id.* If the trial court declines to hear a pre-trial motion to suppress, it is incumbent upon a defendant to properly object at trial and obtain an adverse ruling in order to preserve any error. Tex.R.App. P. 52(a); *State v. Reed*, 888 S.W.2d 117, 119 (Tex.App.—San Antonio 1994, no pet.).

After reviewing the record, we find that appellants did not preserve this error for review. At the trial, appellants did not object to the admission of any evidence obtained at the time of their arrest. Nor did appellants reurge their motion to suppress at any time during the trial. Accordingly, we overrule appellants' fourth point of error.

By their fifth point of error, appellants contend that the trial court erred in misdirecting the jury by failing to include an instruction that mere presence of the appel-

lants at the scene was insufficient to justify conviction. This contention is without merit.

Appellants objected to the jury charge and tendered the following instruction:

> Mere presence alone will not constitute one a party to an offense. To be guilty, you must first find from the evidence beyond a reasonable doubt that the defendants had sufficient affirmative links to the contraband to show that they knew the substance was contraband and that the defendants exercised care, custody, control or management of the substance.

The trial court overruled the objection and stated for the record that the written request was denied. We find, however, that the jury charge contains the following instructions:

> Our law provides that a person commits an offense if he intentionally or knowingly possesses a controlled substance. Cocaine is a controlled substance.

> By the term "possession" is meant the actual care, custody, control or management of the cocaine. With respect to the "possession" charged, you are instructed that such possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his or her control.

> You are further instructed that mere presence of the Defendant[s], DAN ERVIN MEADOR [and DONALD RAY UTZ], at a place where the controlled substances are found does not of itself show possession.

Although the requested instruction contains the language "party to an offense," appellants are not complaining of the omission of this terminology. Instead, they appear to complain that the jury was not appropriately instructed on the question of knowledge.

We hold that the trial court's instruction concerning knowledge and possession is substantially the same as that requested by appellants. In addition, the jury was instructed that presence alone was not sufficient to prove possession. We overrule appellants' fifth point of error.

We AFFIRM the trial court's judgments in cause numbers 13–95–231–CR and 13–95–545–CR.