NUMBER S 13-97-339-CR & 13-97-348-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI


___________________________________________________________________


NILDA AGUILAR AND EVANGELICA AGUILAR , Appellants,



v.




THE STATE OF TEXAS , Appellee.

___________________________________________________________________



On appeal from the 347th District Court

of Nueces County, Texas.


____________________________________________________________________



O P I N I O N


Before Justices Dorsey, Chavez, and Rodriguez

Opinion by Justice Rodriguez


 This is an appeal from two convictions for murder. (1) Appellants, Nilda Aguilar ("Nilda") and Evangelica Aguilar
("Evie"), were tried together after being jointly indicted for the shooting death of Juan Aguilar. (2) A jury found both
women guilty and assessed punishment at twenty-five years in prison. While Nilda and Evie have brought separate
appeals, we address them in a consolidated opinion because their convictions arose from the same offense, they were tried
together, and the facts and issues are similar. We affirm in part and reform and affirm in part.

Facts

 On the night of March 10 or the early morning hours of March 11, 1995, Juan Aguilar ("Juan"), husband and father of the
appellants, was shot to death while sleeping in his bed. The medical examiner determined that the probable time of death
was between 8:00 p.m. on the 10th and 1:00 a.m. on the 11th. During the investigation conducted by the Corpus Christi
Police Department, it was discovered that the appellants had been together during the time period in which Juan was killed.
There was no evidence of forced entry into the Aguilar residence. It was also discovered that Nilda and Juan had argued on
the night of his murder and Juan had asked Nilda to leave. Evidence revealed both women had a rocky relationship with
the victim -- Juan was having an affair and possibly planning to leave Nilda for the other woman; and Evie had recently
been forbidden from entering the Aguilar residence. Furthermore, the "suspected murder weapon" (3) belonged to Juan's son,
Gabriel Aguilar, and Nilda had disposed of it in a creek. Evie led police investigators to the creek where the weapon was
located. Both women were later indicted for the murder of Juan Aguilar.

Points of Error Common to Nilda and Evie

 In Nilda's and Evie's first points of error, they contend there is legally insufficient evidence to sustain their convictions.

 In reviewing a legal sufficiency of the evidence point, we must review all the evidence, both State and defense, in the light
most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Meador v. State, 941 S.W.2d 156, 158
(Tex. App.--Corpus Christi 1996, pet. ref'd). We do not resolve any conflict of fact or assign credibility to the witnesses, as
it is the function of the trier of fact to do so. Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson v.
State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). Instead, an appellate court's duty is only to determine if both the
explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a light most
favorable to the verdict. Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in
favor of the verdict. Matson, 819 S.W.2d at 843. We measure the legal sufficiency of the evidence "by the elements of the
offense as defined by the hypothetically correct jury charge for the case." Malik v. State, 953 S.W.2d 234, 239-40 (Tex.
Crim. App. 1997).

 The application paragraph of the charge in this case correctly directed the jury to find Nilda guilty of murder if: 

 1. NILDA AGUILAR



 (A) did intentionally or knowingly cause the death of an individual, Juan Aguilar, by shooting him with a firearm, 



 OR



 (B) did then and there intend to cause serious bodily injury to the said Juan Aguilar and with said intent to cause serious
bodily injury, did commit an act clearly dangerous to human life, to wit, shooting him with a firearm and did thereby cause
the death to the said Juan Aguilar, and did, in either event, thereby cause the death of the said Juan Aguilar, as set forth in
the indictment,



 OR



 2. that the defendant, NILDA AGUILAR,



 did then and there know of the intent, if any, of EVANGELICA AGUILAR to shoot and kill the said Juan Aguilar, if you
find beyond a reasonable doubt she did, and NILDA AGUILAR acted with intent to promote or assist the commission of
the offense by EVANGELICA AGUILAR by soliciting, encouraging, directing, aiding, or attempting to aid
EVANGELICA AGUILAR to committ the offense of causing the death of Juan Aguilar; . . .



It further directed the jury to find Evie guilty if:



 1. EVANGELICA AGUILAR



 (A) did intentionally or knowingly cause the death of an individual, Juan Aguilar, by shooting him with a firearm, 



 OR



 (B) did then and there intend to cause serious bodily injury to the said Juan Aguilar and with said intent to cause serious
bodily injury, did commit an act clearly dangerous to human life, to wit, shooting him with a firearm and did thereby cause
the death to the said Juan Aguilar, and did, in either event, thereby cause the death of the said Juan Aguilar, as set forth in
the indictment,



 OR



 2. that the defendant, EVANGELICA AGUILAR,



 did then and there know of the intent, if any, of NILDA AGUILAR to shoot and kill the said Juan Aguilar, if you find
beyond a reasonable doubt she did, and EVANGELICA AGUILAR acted with intent to promote or assist the commission
of the offense by NILDA AGUILAR by soliciting, encouraging, directing, aiding, or attempting to aid NILDA AGUILAR
to committ the offense of causing the death of Juan Aguilar; . . .



 While appellants were tried jointly, some evidence was admitted only against one or the other appellant. Therefore, where
appropriate we will distinguish which evidence was admitted against which appellant. Otherwise, the evidence was
considered against both.

 The evidence showed Juan Aguilar was killed by a gunshot wound to the head from a high velocity rifle on the night of
March 10 or early morning hours of March 11. There was no evidence of forced entry into the residence. The medical
examiner testified that the time of death was between 8:00 p.m. and 1:00 a.m. The record reflects that before Juan's death,
Nilda and Evie met at a grocery store purportedly to purchase a loaf of bread, but also to talk because Juan had forbidden
Evie from entering his home. Investigators found a new loaf of bread in the trash at the Aguilar residence the morning after
Juan's murder. Before his murder, Juan and Nilda had dinner together and sex afterward, then, according to Nilda, Juan
became angry and told her to leave, which she did at approximately 7:45 p.m. She spent the rest of the night with Evie.

 The probable murder weapon was a .25-06 rifle belonging to Juan's son. This is the same caliber weapon used to kill Juan. 
This weapon was recovered from a creek by police who were led to its whereabouts by Evie. A spent cartridge was
recovered from the rifle. Evie informed police that the weapon had been disposed of by Nilda in an attempt to keep Juan
from using the weapon against himself. There was also evidence that Juan's service revolver, (4) a Smith and Wesson .357
Magnum, was in the residence when Juan's body was discovered.

 The record revealed the relationships between Juan and appellants were unstable. Juan was having an extra-marital affair
with a woman by the name of Rosalinda Morales. Both appellants were aware of this affair. There was evidence that Nilda
was upset about the affair, including: (1) Nilda confronting Morales at Morales's apartment (only admitted against Nilda),
(2) Nilda slapping Juan during the above mentioned confrontation (only admitted against Nilda), and (3) Nilda ramming
Juan's vehicle with her own while Juan and Morales were inside it (only admitted against Nilda). Additionally, Amanda
Aguilar (5) testified that Nilda had asked her whether there was anyone in Robstown who could have Juan's mistress killed.

 There was evidence that, on at least one occasion, Evie told two off-duty police officers who were working security at a
night club that she hated her father and wished he was dead. There was obvious strife in their relationship as Juan had
forbidden her from his home. On the day Juan was murdered, he and Evie had argued about $1,200 she owed him.

 Abel Martinez testified that Evie attempted to sell him a "deer rifle" (6) for $1,500 approximately one month before Juan's
murder.

 Janette Rodriguez testified that she observed Nilda and Evie whispering, smiling, and giggling at Juan's funeral and that
Nilda had told her two or three times that she hated Juan and wanted to kill him.

 We find the evidence, when viewed in the light most favorable to the jury's verdict, sufficient to allow a rational juror to
have found the essential elements of the offense beyond a reasonable doubt. Therefore, we overrule both appellants' first
points of error.

 In Nilda's second and Evie's third points of error, they argue the trial court erred in denying their respective motions for
severance.

 Motions for severance not made prior to the announcement of ready are not considered timely and will not be addressed by
the trial court. Silva v. State, 933 S.W.2d 715, 718 (Tex. App.--San Antonio 1996, no pet.); Foster v. State, 652 S.W.2d
474, 477 (Tex. App.--Houston [1st Dist.] 1983), aff'd, 693 S.W.2d 412 (Tex. Crim. App. 1985). No error is presented
where the trial court fails to grant an untimely motion to sever. Etter v. State, 679 S.W.2d 511, 515 (Tex. Crim. App.
1984); Silva, 933 S.W.2d at 718. Therefore, appellants' motions to sever filed after trial had begun were properly denied.

 As to appellants' pre-trial motions, article 36.09 states that where "it is made known to the court that there is a previous
admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant, the court shallorder
a severance as to the defendant whose joint trial would prejudice the other defendant or defendants." Tex. Code Crim.
Proc. Ann. art. 36.09 (Vernon 1981); see Garza v. State, 622 S.W.2d 85, 91 (Tex. Crim. App. 1980); Robertson v. State,
632 S.W.2d 805, 808 (Tex. App.--Houston [14th Dist.] 1982, no pet.). A trial court does not abuse its discretion where
"the movant has failed to satisfy the heavy burden of showing clear prejudice." Silva, 933 S.W.2d at 719; Loveless v. State,
800 S.W.2d 940, 945 (Tex. App.--Texarkana 1990, pet. ref'd); Alvarado v. State, 818 S.W.2d 100, 102 (Tex. App.--San
Antonio 1991, no pet.). If the movant fails to support its motion to sever with sufficient evidence, its denial is not an abuse
of discretion. Ransonette v. State, 550 S.W.2d 36, 41 (Tex. Crim. App. 1976); see Silva, 933 S.W.2d at 719.

 Nilda and Evie timely filed motions for severance alleging their inconsistent defenses would prejudice their case. At the
hearing on Evie's motion, Evie's attorney presented evidence through the testimony of Doug Mann, an attorney familiar
with the case, that Evie did not commit the offense, rather it was her codefendant, Nilda, that killed Juan. He further
testified in an effort to explain the antagonism between the two defendants that Evie was able to show police where the
purported murder weapon was located because she had seen Nilda put it there and that Nilda had threatened her with the
very same weapon before disposing of it. On the other hand, during Nilda's hearing, her attorney, Doug Tinker, testified
that Nilda's defense was that Evie, not Nilda, killed Juan and that he expected to present evidence to that effect. He further
stated that he intended to show that Nilda had nothing to do with Juan Aguilar's death.

 A party asserting the trial court abused its discretion in denying a motion for severance must present more than a general
allegation that a codefendant has a conflicting or inconsistent defense. Calverley v. State, 511 S.W.2d 60, 62 (Tex. Crim.
App. 1974), overruled on other grounds, Moosavi v. State, 711 S.W.2d 53, 55 (Tex. Crim. App. 1986); Silva, 933 S.W.2d
at 719. Furthermore, it is not enough that the evidence presented during the severance hearings would establish differing
degrees of culpability among the defendants. Mahavier v. State, 644 S.W.2d 129, 133 (Tex. App.--San Antonio 1982, no
pet.). "Instead, the codefendants' positions must be 'mutually exclusive' in the sense that 'the jury in order to believe the
core of one defense must necessarily disbelieve the core of the other.'" Silva, 933 S.W.2d at 719 (citing Goode v. State, 740
S.W.2d 453, 455 n. 2 (Tex. Crim. App. 1987) (quotingUnited States v. Lee, 744 F.2d 1124, 1126 (5th Cir. 1984) and
DeGrate v. State, 518 S.W.2d 821, 822 (Tex. Crim. App. 1975)). 

 We find appellants have failed to satisfy this burden. As noted above, the evidence presented during Nilda's hearing on her
motion to sever did not demonstrate her defense was necessarily inconsistent with Evie's. Her attorney testified that he
intended to show that Evie killed Juan and that Nilda did not. Evie's defense, on the other hand, was just the opposite. 
However, there was no evidence that Nilda would not be guilty of the charged offense even if the jury believed her defense
that Evie was responsible for Juan's death. Without evidence that Nilda would not be guilty of the charged offense either as
a principal or as a party, her defense is not mutually exclusive. We, therefore, overrule Nilda's second and Evie's third
points of error.

Point of Error Relevant Only to Nilda

 In her final point of error, Nilda argues the trial court erred in failing to instruct the jury on the accomplice-witness rule.

 Code of criminal procedure article 38.14 provides that "a conviction cannot be had upon the testimony of an accomplice
unless corroborated by other evidence tending to connect the defendant with the offense." Tex. Code Crim. Proc. Ann. art.
38.14 (Vernon 1979). However, the accomplice-witness rule only applies where the State calls the witness and relies on
that testimony. See Selman v. State, 807 S.W.2d 310, 311 (Tex. Crim. App. 1991).

 We hold an instruction was not necessary. Evie testified in her own defense and not as a witness for the State. The jury
was instructed that it could not use Evie's testimony as evidence against Nilda. We hold the accomplice-witness rule is
inapplicable in this situation. Nilda's third point of error is overruled.

Points of Error Relevant Only to Evie

 In her second point of error, Evie contends the evidence was factually insufficient to support her conviction.

 In reviewing a challenge to the factual sufficiency of the evidence, we consider all of the evidence without the prism of "in
the light most favorable to the prosecution" and set aside the verdict only if it is so against the overwhelming weight of the
evidence that it is manifestly unjust and clearly wrong. Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996). It is
well established in Texas jurisprudence that when reviewing a factual sufficiency point of error, we must remain
appropriately deferential to the trial court so as to avoid this Court substituting its judgment for that of the factfinder. Id. at
132. It is the trier of fact who judges the credibility of the witnesses and the weight to be given their testimony, and it may
resolve or reconcile conflicts in the testimony as it sees fit. Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Clewis,
922 S.W.2d at 133; Haskins v. State, 960 S.W.2d 207, 209 (Tex. App.--Corpus Christi 1997, no pet. h.). This Court may
only reverse a jury's findings if the verdict is so against the great weight and preponderance of the evidence that it is
"manifestly unjust," "shocks the conscience," or "clearly demonstrates bias." Clewis, 922 S.W.2d at 135 (citing Meraz v.
State, 785 S.W.2d 146, 149 (Tex. Crim. App. 1990)). The court of criminal appeals has held that "[a]ppellate courts should
only exercise their fact jurisdiction to prevent a manifestly unjust result; . . . those courts 'are not free to reweigh the
evidence and set aside a jury verdict merely because the judges feel that a different result is more reasonable.'" Clewis, 922
S.W.2d at 135 (quoting Pool v. Ford Motor Co., 715 S.W.2d 629, 634 (Tex. 1986) (quoting Dyson v. Olin Corp., 692
S.W.2d 456, 458 (Tex. 1985) (Robertson, J., concurring))).

 Because we recited the evidence in this case under point of error one, we will not restate it here. Having reviewed the
entire record, we do not find the verdict so against the great weight and preponderance of the evidence that it is manifestly
unjust. Evie's second point of error is overruled.

 In her fourth point of error, Evie asserts the trial court erred in excluding evidence that Juan told Candy Brown a/k/a Candy
Morris that Nilda had threatened to kill Juan and that Juan was afraid of her.

 Relying on Ramirez v. State, 543 S.W.2d 631 (Tex. Crim. App. 1976), Evie suggests that this evidence is admissible
where: (1) the State is relying on circumstantial evidence; (2) the guilt of a third party is inconsistent with the guilt of the
accused; and (3) the facts demonstrate the third party was so situated that he might have committed the offense. Id. at 633. 
Appellant's reliance on Ramirez, however, is misplaced. The rule enunciated in Ramirez is that "declarations of a third
party admitting his guilt of the crime for which the accused [appellant] is on trial are admissible" where the above criteria
are met. In the case at bar, the statements that Evie proffered were the "thoughts" of the deceased and not admissions of a
third party. We therefore conclude Ramirez is inapplicable here.

 The proffered statements were more akin to state-of-mind evidence. Such evidence has been held inadmissible hearsay
when offered for a purpose other than to show the state of mind of the declarant. Tex. R. Evid. 803(3); see Williams v.
State, 927 S.W.2d 752, 764 (Tex. App.--El Paso 1996, pet. ref'd); McDonald v. State, 911 S.W.2d 798, 806 (Tex.
App.--San Antonio 1995, pet. dism'd w.o.j.); Pena v. State, 864 S.W.2d 147, 149-50 (Tex. App.--Waco 1993, no pet.);
Navarro v. State, 863 S.W.2d 191, 197 (Tex. App.--Austin 1993, pet. ref'd). Because Evie wished to offer the above
testimony to show that Nilda killed Juan and not to show Juan's state of mind, it is inadmissible hearsay. Accordingly, the
trial court did not err in excluding it. Evie's fourth point of error is overruled.

 In her fifth and sixth points, Evie challenges the trial court's finding that a deadly weapon was used in the commission of
the offense. Specifically, she argues that where the trial court does not act as the trier of fact in either the guilt/innocence or
punishment phases of trial, it is error for the judge to enter a deadly weapon finding.

 Evie is correct that "the power of the trial court to make affirmative findings" is predicated upon it being the trier of the
facts. See Travelstead v. State, 693 S.W.2d 400, 401 (Tex. Crim. App. 1985). "When the issue of punishment is before the
jury, the trial court should submit a special issue to the jury regarding an affirmative finding of a deadly weapon." Id. The
trial court in this case did not submit a special issue to the jury. Therefore, it was error for the trial court to have entered the
deadly weapon finding. 

 An affirmative finding of the use of a deadly weapon in the commission of an offense affects the defendant's parole
eligibility. Tex. Code Crim. Proc. Ann. art. 42.18, § 8(b)(3) (Vernon Supp. 1999). However, because Evie was convicted
of murder, and murder is an enumerated offense having the same effect as a deadly weapon finding, the court's finding is of
no effect. See Tex. Gov't Code Ann. §508.145(d) (Vernon 1998) (enunciating the same parole eligibility requirements for
murder and offenses enhanced by a deadly weapon finding); Medina v. State, 962 S.W.2d 83, 88 (Tex. App.--Houston [1st
Dist.] 1997, pet. ref'd). While the finding may have had no effect, the judgment must be reformed and the improper finding
deleted. See id. (citing Polk v. State, 693 S.W.2d 391, 396 (Tex. Crim. App. 1985));Weaver v. State, 855 S.W.2d 116, 123
(Tex. App.--Houston [14th Dist.] 1993, no pet.).

 The judgment of the trial court is AFFIRMED as to Nilda Aguilar; as to Evangelica Aguilar, the judgment is REFORMED
to delete the deadly weapon finding, and is AFFIRMED as REFORMED.

 Nelda V. Rodriguez

 Justice



Do not publish.

Tex. R. App. P. 47.3.



Opinion delivered and filed

this the 6th day of May, 1999.

1. Tex. Pen. Code Ann. § 19.02 (Vernon 1994).

2. Juan Aguilar was the husband of Nilda and father of Evie.

3. It is only the suspected murder weapon because, while it is the same caliber weapon used to kill the victim, had a spent
cartridge in the chamber, and belonged to the victim's son, it had been disposed of in a creek, where it corroded to the point
that it was no longer determinable by ballistic experts whether it was, in fact, the weapon used to kill Juan Aguilar.

4. Juan Aguilar was an officer with the Corpus Christi Police Department.

5. Sister of Juan Aguilar.

6. Martinez, however, did not positively identify the suspected murder weapon as the deer rifle he had previously seen.