NUMBER 13-96-633-CR and 13-96-634-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


RICARDO CORDOVA
, Appellant,


v.



THE STATE OF TEXAS
, Appellee.

___________________________________________________________________


On appeal from the 107th District Court


of Cameron County, Texas.


____________________________________________________________________


OPINION ON MOTION FOR REHEARING



Before Justices Dorsey, Yañez, and Rodriguez


Opinion by Justice Rodriguez


 

 In light of the recent ruling in Barrera v. State, 982 S.W.2d 415
(Tex. Crim. App. 1998), this Court granted the State's motion for
rehearing in this case. We now withdraw our opinion of August 31,
1998, and substitute the following as the opinion of the Court.

 The jury found appellant, Ricardo Cordova, guilty of murder(1) and
aggravated assault.(2) The court assessed punishment at thirty years
confinement for the murder and ten years confinement for the
aggravated assault, the sentences to run consecutively. Appellant
challenges the jury charge, the sufficiency of the evidence, and the
consecutive sentencing order. We reform the judgment, and affirm as
reformed.

 Appellant shot Andres Ledezma and Marilou Moreno at a bar,
killing Ledezma and wounding Moreno. Appellant claims the shootings
were in self-defense. The court's charge instructed the jury on self-defense, but did not apply the law of self-defense to the facts of the
case.(3) Appellant did not request such an application and did not object
to its omission.

 By his first point of error and his first point on rehearing, appellant
complains the court erred in its instructions to the jury by failing to apply
the law of self-defense to the facts of the case in the charge.

 Section 2.03(d) of the Texas Penal Code provides "if the issue of
the existence of a defense is submitted to the jury, the court shall charge
that a reasonable doubt on the issue requires that the defendant be
acquitted." Tex. Pen. Code Ann. § 2.03(d) (Vernon 1994). If a court
submits an issue of the existence of a defense to the jury, any flaw in
the charge on self-defense amounts to charge error. See Barrera, 982
S.W.2d at 416. Because the court's charge instructed the jury on the
law of self-defense, but did not apply the law to the facts of the case as
required by section 2.03(d), we conclude there was error in the charge.

 The manner of appellate review for charge error is prescribed by
article 36.19 of the Texas Code of Criminal Procedure which provides in
relevant part:

 Whenever it appears by the record in any criminal action
upon appeal that any requirement of Articles 36.14, 36.15,
36.16, 36.17 and 36.18 has been disregarded, the judgment
shall not be reversed unless the error appearing from the
record was calculated to injure the rights of defendant, or
unless it appears from the record that the defendant has not
had a fair and impartial trial. . . .


Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 1981). Article 36.14, one
of the statutory provisions referenced in article 36.19, provides, in part,
that the charge of the court shall include "the law applicable to the
case." See Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon 1981).

 However, appellant contends the charge error is constitutional error
and should be analyzed pursuant to rule 44.2(a) of the Texas Rules of
Appellate Procedure. Rule 44.2(a) provides:

 If the appellate record in a criminal case reveals
constitutional error that is subject to harmless error review,
the court of appeals must reverse a judgment of conviction or
punishment unless the court determines beyond a reasonable
doubt that the error did not contribute to the conviction or
punishment.


Tex. R. App. P. 44.2(a). Accordingly, to determine the proper standard of
review, we must resolve the threshold issue of whether the error is
constitutional error.

 Questioning the importance of a procedurally perfect jury charge,
the court of criminal appeals recently held that failure to apply an
otherwise correct defensive jury instruction did not implicate the federal
constitution. See Barrera, 982 S.W.2d at 417 (citations omitted). 
Therefore, on rehearing, appellant urges only a violation of the state
constitution.

 Appellant contends that the charge error infringes upon two areas
of the state constitution: (1) the right to a fair and impartial trial under
the due course of law provision in article 1, section 19, of the Texas
Constitution,(4) and (2) the right to a jury trial which is guaranteed by
article 1, sections 10 and 15 of the Texas Constitution.(5)

Appellant has not shown, however, why the state constitution might
offer greater due process and trial by jury protections than the federal
constitution. Appellant has not argued how the protections provided
under the Texas Constitution differ from those provided under the United
States Constitution. Appellant relies on charge error cases that discuss
federal and state constitutional protections in tandem.(6) The cases make
no distinction between state and federal constitutional rights.

 Failure to provide the reviewing court with any distinction or
reason for greater protection under the state constitution makes it
unnecessary to review the merits of that point. LaGrone v. State, 942
S.W.2d 602, 612 (Tex. Crim. App. 1997). As appellant has offered no
basis for greater protection under the state constitution as compared to
the federal constitution, he has waived his state constitution argument.

 Even assuming appellant preserved this argument, we conclude
there is no state constitutional error. Although charge error is indeed a
concern, state courts have traditionally reviewed charge error as non-constitutional error. See e.g., Barrera, 982 S.W.2d at 417; Fennell v.
State, 424 S.W.2d 631, 632 (Tex. Crim. App. 1968); Russell v. State,
834 S.W.2d 79, 82 (Tex. App.--Dallas 1992, pet. ref'd).

 Appellant relies on Abdnor for the proposition that "an erroneous
or incomplete jury charge jeopardizes a defendant's right to jury trial
because it fails to properly guide the jury in its fact finding function." 
Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App.1994). Abdnor
also sets out, however, that "[a]n erroneous or incomplete jury charge
. . . does not result in automatic reversal of a conviction." Id. Abdnor
contrasted review of jury charge error under article 36.19 and Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)
(statutorily imposed harm analysis for charge error), with review of trial
error under rule 44.2(a), formerly rule 81(b)(2). See id. at 731-32
(citations omitted). The court explained rule 44.2(a) applies only to trial
errors that amount to a denial of federal or state constitutional rights and
where there is no countervailing procedural rule or statutory provision. 
See id. at 732 (citing Rose v. State, 752 S.W.2d 529, 554 (Tex. Crim.
App. 1987)). Importantly, the Abdnor court reviewed the charge error(7)
pursuant to article 36.19 and Almanza, and not pursuant to rule 44.2 as
is urged by appellant. See id. at 732. Thus, again, the charge error was
treated as non-constitutional.(8)

 Appellant also relies on Doyle v. State, 631 S.W.2d 732 (Tex. Crim.
App. 1980) (op. on reh'g); Ex Parte Clark, 597 S.W.2d 760, 761 (Tex.
Crim. App. 1979) (habeas corpus proceeding); Williams v. State, 547
S.W.2d 18, 20 (Tex. Crim. App. 1977); and Harris v. State, 522 S.W.2d
199 (Tex. Crim. App. 1975). In these pre-Almanza cases, the issue
before the court of criminal appeals was whether the unpreserved error
was fundamental error. The court concluded that certain charge errors
infringe upon the state and federal constitutions, see Doyle, 631 S.W.2d
at 738; Harris, 522 S.W.2d at 202; violate constitutional rights, see
Clark, 597 S.W.2d at 761; and impair the right to trial by jury, see
Williams, 547 S.W.2d at 20. Nonetheless, while the court discussed
constitutional rights, the discussion was in the context of review
pursuant to article 39.16. In each case, the fundamental error was
treated as non-constitutional error.

 Finding fundamental error that involves the rights of an appellant
to the extent he has not had a fair and impartial trial, does not translate
into constitutional error. The rationale for reviewing fundamental error
is the concern that an accused has been denied a fair trial because
counsel did not timely and properly object to error occurring during the
trial of the case. See Blue v. State, 983 S.W.2d 822, 815 (Tex. App.--Houston [1st Dist.] 1998, no pet.)(en banc) (Taft, J., concurring). To
construe any error involving a constitutional right or any error of
constitutional magnitude as "constitutional" error would encompass
every error imaginable. See id. at 816; cf. Tate v. State, 988 S.W.2d
887, 890 (Tex. App.--Austin 1999, no pet.) (citing Jones v. State, 982
S.W.2d 386, 390-91 (Tex. Crim. App.1998) (constitutional right to trial
by impartial jury is not violated by every jury selection error)). For
example, any violation of a rule or statute could be viewed as violating
due process. See Blue, 983 S.W.2d at 816. Certainly, any error in the
jury charge could be viewed as impacting a jury trial. Yet, the Texas
Legislature and the Texas courts have established that charge error is to
be reviewed under standards provided in article 36.19 and Almanza. 
The Legislature drafted article 36.14 to provide for a jury charge that
includes "the law applicable to the case," and, if it does not, the
Legislature determined review is to be pursuant to article 36.19. See
Tex. Code Crim. Proc. Ann. art. 36.14, art. 36.19 (Vernon 1981). Further,
the Legislature established the requirement that the charge include an
application paragraph if the issue of the existence of a defense is
submitted to the jury. See Tex. Pen. Code Ann. § 2.03(d) (Vernon 1994). 
These requirements are not mandated by our state constitution. They
are purely creations of the Texas Legislature. Cf. Woodward v. State,
996 S.W.2d 925, 929 (Tex. App.--Houston [1st Dist.] 1999, pet. ref'd)
(court held no constitutional error when trial court did not comply with
article 36.28 because requirement was created by Legislature, thus harm
analysis under rule 44.2(a) not required).

 Furthermore, we are not prepared to reach the conclusion that the
charge error at issue in this case is constitutional error, particularly when
the court of criminal appeals recently emphasized the decline of the
importance of the application paragraph of the charge. See Barrera, 982
S.W.2d at 417 (citing Malik v. State, 953 S.W.2d 234, 238 (Tex. Crim.
App. 1997)). The court questioned the importance of a "procedurally
perfect" jury charge, and acknowledged that the jury could perform just
as well without application paragraphs. See id. Without reaching the
issue of state constitutional error, the court of criminal appeals held that
failure to apply the law of self-defense to the facts of the case does not
amount to a federal constitutional error, but is merely a technical
violation of a state-law rule. See id. (citations omitted). The court
further set out that review of such error is controlled by article 36.19 and
Almanza. See id.

 Accordingly, because the state legislature and state courts have
seen fit to set out a separate standard of review for charge error, and
because the charge error at issue in this case is not a direct violation of
a state constitutional provision but rather a mere violation of a state-law
rule, we conclude that failure to apply the law of self-defense to the facts
of the case does not amount to state constitutional error. Therefore,
appellant's first point of error and his first point of error on rehearing are
overruled.

 Having found the charge error in this case is not constitutional
error, our review is controlled by article 36.19 and Almanza. See
Barrera, 982 S.W.2d at 417. Because appellant did not object to the
omission in the charge, he must show fundamental error to obtain
reversal. See Almanza, 686 S.W.2d at 171. To establish fundamental
error under Almanza, appellant must show that the charge error was so
egregious and created such harm that he did not have a fair and
impartial trial; that is, the error caused appellant "egregious harm." See
id. Egregious charge error affects "the very basis of the case," deprives
the defendant of a "valuable right," or "vitally affect[s] a defensive
theory." Hutch v. State, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)
(quoting Almanza, 686 S.W.2d at 172).

 In point of error two and point of error two on rehearing, appellant
urges that failure to provide an application paragraph on the issue of
self-defense in the court's charge, including failure to instruct the jury
that they must acquit appellant if they had a reasonable doubt on the
issue of self-defense, caused him egregious harm. Appellant contends
the issue of self-defense was vitally important to this case, and the
charge error was so egregious it affected the very basis of the case and
denied appellant a fair and impartial trial.

 Under Almanza, the actual degree of harm must be measured in
light of (1) the entire jury charge; (2) the state of the evidence, including
the contested issues and the probative evidence; (3) the argument of
counsel; and (4) any other relevant information revealed by the trial
record as a whole. See Almanza, 686 S.W.2d at 171.

 Our review begins with the charge. The jury was instructed on (1)
the offense of murder; (2) the offense of manslaughter; and (3) the
offense of aggravated assault. The charge included application
paragraphs for the offenses, and definitions and instructions on
reasonable doubt. The charge instructed the jury on the elements of
self-defense and deadly force in defense of a person.(9) The charge did
not apply the law of self-defense to the facts of the case.

 Our review of the evidence, including the contested issues and the
probative evidence, reveals appellant went to the balcony and fired a
gun eight times, striking Ledezma and Moreno.(10) Appellant claims the
shooting was in self-defense. Appellant testified that when he
approached Ledezma's table, Ledezma went for a gun. Appellant
explained he grabbed Ledezma's gun, "went back," and "the gun started
shooting." Appellant testified he got scared, threw the gun on the floor,
and left the bar. The victim's nephew testified appellant began firing a
gun as appellant walked toward the table where they were sitting. The
bar manager heard the shots and saw appellant coming down the stairs
with a pistol in his hand. The gun was never found.

 Appellant made two trips to the bar that evening. When appellant
first arrived, a security guard searched him and found no weapon. 
When appellant returned to the bar the second time, the guard did not
search him. Ledezma was also searched by the guard when he arrived
at the bar and no weapon was found on him.

 Appellant testified he did not go to the balcony on his first visit. 
Ledezma's nephew testified he had seen appellant earlier, seated at
another table on the balcony staring at his uncle. Additionally, a police
officer testified he saw appellant go to the balcony earlier in the evening. 
There was also testimony that two years earlier, Ledezma shot and killed
appellant's cousin. Ledezma claimed self-defense, and was not indicted.

 State witnesses, Detective Merlin Rasco and firearm expert William
Sorrow, concluded the weapon used was a .45 semi-automatic
handgun. Appellant testified "the gun started shooting." Detective
Rasco testified the gun could not go off accidentally nine times because
the shooter would have to depress the trigger nine times. Sorrow
compared bullets found at the scene with those taken from the victim,
and concluded the bullets were fired from the same weapon. He also
compared casings found at the scene with one found in appellant's yard,
and concluded the casings were fired from the same weapon. Sorrow
could not conclude that the bullets and casings were fired from the
same gun.

 Dr. Margie Cornwell performed the autopsy. She testified
Ledezma's bullet wounds were not consistent with appellant's claim
that there was a struggle or close contact. She agreed that a close-contact self-defense scenario was possible, but concluded it was not
probable. David Spence, a forensic chemist, testified he found primer
gunshot residue on the backs and palms of Ledezma's hands which
indicated Ledezma either fired or handled the gun, or was in close
proximity to the gun. Appellant argues this testimony is consistent with
his self-defense theory. However, the chemist also testified that the
majority of the primer gunshot residue would be expelled away from the
shooter, often traveling two to six feet away from the muzzle. Thus, one
would expect to find primer gunshot residue on the victim. 

 We also review argument of counsel and other relevant information
revealed in the record of the trial as a whole to measure the degree of
harm. Appellant's counsel first defined self-defense at jury selection and
inquired whether all prospective jurors could follow the law of self-defense. In his opening statement, appellant's counsel began by
reiterating a person's right to defend himself. Finally, in closing, counsel
for appellant discussed how the testimony of witnesses related to
appellant's claim of self-defense, argued to the jury that they should
consider the issue of self-defense, and concluded that "the whole issue
is murder versus self-defense." 

 Based on our review, appellant has not shown that the omission
of the self-defense application paragraph affected the very basis of the
case, or deprived him of his constitutional rights, or vitally affected his
self-defense theory. Although the charge did not contain an application
paragraph on the law of self-defense, it did instruct the jury on the
elements of self-defense in the abstract. Appellant relied on self-defense
as a defensive theory at trial, and, beginning with jury selection and
ending with closing argument, urged the jury to consider the issue of
self-defense. Appellant testified regarding his self-defense claims. The
State provided contradictory testimony. Considering the jury was given
a general instruction on the law of self-defense and appellant discussed
self-defense throughout the trial, we conclude the charge error at issue
in this case did not cause egregious harm to appellant. Appellant's
second point of error and his second point on rehearing are overruled.

 By his third point, appellant complains the trial court erred in failing
to instruct the jury under what circumstances it must acquit on the
charge of murder. Specifically, appellant complains that while the court
instructed the jury "unless you have a reasonable doubt, or if you have
doubt thereof, you must acquit the defendant of murder," the court
completely failed to instruct the jury that they should acquit appellant of
murder if there is a reasonable doubt as to any element of the offense.

 General instructions and definitional instructions need not be
applied to the facts of a case. See Clark v. State, 929 S.W.2d 5, 10 (Tex.
Crim. App. 1996). Moreover, the application paragraph is not required
to specifically apply the law of reasonable doubt. See id. As long as the
application paragraph requires all elements to be proven beyond a
reasonable doubt, no error exists. See id. 

 The charge instructed the jury on "reasonable doubt" as follows: 
"[t]he prosecution has the burden of proving the defendant guilty and it
must do so by proving each and every element of the offense charged
beyond a reasonable doubt and if it fails to do so, you must acquit the
defendant." See Geesa v. State, 820 S.W.2d 154, 162, (Tex. Crim. App.
1991). The charge also defined "reasonable doubt" as "doubt based on
reason and common sense after a careful and impartial consideration of
all the evidence in the case. It is the kind of doubt that would make a
reasonable person hesitate to act in the most important of his own
affairs." Further, the application paragraph for the offense of murder
clearly required the State to prove all elements of the offense "beyond a
reasonable doubt." The paragraph following the application paragraph
provided: "[u]nless you so find beyond a reasonable doubt, or if you
have a reasonable doubt thereof, you will acquit the defendant of
murder." We conclude this language was sufficient to refer the jury to
the preceding application paragraph which set out the elements of
murder, to refer the jury to the definitional instruction of "reasonable
doubt" appearing elsewhere in the jury charge, and to require the jury to
apply the definition and acquit appellant if the State failed to prove each
and every element of the charged offense beyond a reasonable doubt. 
Accordingly, we find no error exists. Appellant's third point of error is
overruled.

 In point of error four, appellant challenges the legal sufficiency of
the evidence to support the jury's verdict of guilty on both charges of
murder and aggravated assault.

 In reviewing the legal sufficiency of the evidence to support a
conviction, we must review all evidence, both State and defense, in the
light most favorable to the verdicts to determine whether any rational
trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319
(1979); Meador v. State, 941 S.W.2d 156, 158 (Tex. App.--Corpus
Christi 1996, pet. ref'd). We measure the legal sufficiency of the
evidence by the elements of the offense as defined by the hypothetically
correct jury charge. Malik, 953 S.W.2d at 162. The standard is the
same for both circumstantial and direct evidence. Meador, 941 S.W.2d
at 158. 

 Where self-defense is raised, the State does not have the burden
of production to refute the self-defense claim. Saxton v. State, 804
S.W.2d 910, 914 (Tex. Crim. App. 1991). The State does, however,
have the burden of persuasion in disproving the evidence of self-defense,
a burden requiring the State to prove its case beyond a reasonable
doubt. See id. at 913. More importantly, the issue of self-defense is an
issue of fact for jury determination. Id. (citing Jenkins v. State, 740
S.W.2d 435, 488 (Tex. Crim. App. 1983)). The credibility determination
of the defensive evidence is solely within the jury's province and the jury
is free to accept or reject the self-defense evidence. See id. at 914. 
Therefore, for legal sufficiency, after viewing all the evidence in the light
most favorable to the prosecution, the reviewing court determines
whether any rational trier of fact could have found against the appellant
on the self-defense issue beyond a reasonable doubt. Id. A jury verdict
of guilty is an implicit finding that the jury rejected the self-defense
theory. Id. (citing Jenkins, 740 S.W.2d at 488).

 Accordingly, when viewed in the light most favorable to the
verdict, we conclude the evidence is sufficient for a rational trier of fact
to find, beyond a reasonable doubt, appellant committed the murder of
Ledezma and the aggravated assault of Moreno, and, disbelieving
appellant's self-defense testimony, to find against appellant on the self-defense issue beyond a reasonable doubt. Appellant's fourth point of
error is overruled.

 In point of error five, appellant challenges the factual sufficiency of
the evidence to support the jury's verdict of guilty. 

 The standard for review of a factual sufficiency challenge was first
set out in Clewis v. State, 922 S.W.2d 125 (Tex. Crim. App. 1996)
(evidentiary review for affirmative defense). Clewis provided the verdict
may be set aside pursuant to a factual sufficiency challenge only if, after
viewing all the evidence without the prism of "in the light most favorable
to the prosecution," it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Id. at 129. The court of
criminal appeals recently clarified factual sufficiency review under
Clewis. See Johnson v. State, No. 1915-98, slip op. at 18, 2000 WL
140257, *8 (Tex. Crim. App. Feb. 9, 2000) (en banc) (evidentiary review
for elements of offense). In Johnson, the court concluded the
appropriate scope of a criminal factual sufficiency review of the elements
of the offense encompasses both formulations utilized in civil
jurisprudence. See id. "[T]he evidence can be factually insufficient if (1)
it is so weak as to be clearly wrong and manifestly unjust, or (2) the
adverse finding is against the great weight and preponderance of the
available evidence." Id.

 Therefore, the complete and correct standard a
reviewing court must follow to conduct a Clewis factual
sufficiency review of the elements of a criminal offense asks
whether a neutral review of all the evidence, both for and
against the finding, demonstrates that the proof of guilt is so
obviously weak as to undermine confidence in the jury's
determination, or the proof of guilt, although adequate if
taken alone, is greatly outweighed by contrary proof.


Id. (citing Mata v. State, 939 S.W.2d 719, 729 (Tex. App.--Waco 1997,
no pet.) (Vance, J., concurring).

 In order to properly engage in factual sufficiency review, we must: 
(1) give proper deference to jury findings; (2) support a finding of factual
insufficiency by providing a detailed explanation of that finding so the
court of criminal appeals can ensure that proper deference was accorded
to jury findings; and (3) review all of the evidence. See Cain v. State,
958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997). The reviewing court
may not substitute its own judgment for that of the fact finder. See
Clewis, 922 S.W.2d at 133. Disagreeing with "the fact finder's
determination is appropriate only when the record clearly indicates such
a step is necessary to arrest the occurrence of a manifest injustice." 
Johnson, slip op. at 12-13, 2000 WL 140257, *6.

 In conducting a factual sufficiency review where the defendant has
claimed self-defense, an appellate court may find that the jury's rejection
of the self-defense theory was not wrong and unjust. See Bumguardner
v. State, 963 S.W.2d 171, 173 (Tex. App.--Waco 1998, pet. ref'd) (citing
Clewis, 922 S.W.2d at 135). 

 We have completed a neutral review of all of the evidence, both for
and against the finding, and have summarized the relevant evidence
above. We conclude the proof of guilt is not so obviously weak as to
undermine confidence in the jury's determination; nor is it greatly
outweighed by contrary proof. Furthermore, appellant's self-defense
testimony was not corroborated,(11) and the jury chose not to believe
appellant; therefore, we also conclude the jury's rejection of appellant's
self-defense claim was not wrong and unjust. Appellant's fifth point of
error is overruled.

 By point of error three on rehearing, appellant contends the trial
court erred in stacking sentences when the charges in both causes arose
out of the same criminal episode and were prosecuted in a single trial.(12) 
See Tex. Pen. Code Ann. §§ 3.01-3.03 (Vernon 1994); LaPorte v. State,
840 S.W.2d 412, 415 (Tex. Crim. App. (1992). The State concedes this
point. Accordingly, we sustain appellant's third point of error on
rehearing, and reform the judgments in cause numbers 96-CR-334-A
and 96-CR-335-A from the 107th District Court in Cameron County to
delete the cumulation order and to order the sentences to run
concurrently. See Tex. R. App. P. 44.3; Guidry v. State, 909 S.W.2d 584,
585 (Tex. App.--Corpus Christi 1995, pet. ref'd).

 The judgment of the trial court is AFFIRMED as REFORMED. 

 NELDA V. RODRIGUEZ

 Justice


Do not publish.

Tex. R. App. P. 47.3.



Opinion delivered and filed

this the 18th day of May, 2000.

 

1. See Tex. Pen. Code Ann. § 19.02(b)(1), (2) (Vernon 1994).
2. See Tex. Pen. Code Ann. § 22.02(a)(1), (2) (Vernon 1994).
3. See Tex. Pen. Code Ann. § 2.03(d) (Vernon 1994).
4. Article 1, section 19 of the Texas Constitution sets out that no
citizen shall be deprived of life, liberty, property, privileges or immunities
except by due course of law. See Tex. Const. art. I, § 19.
5. Article 1, section 10 of the Texas Constitution states "[i]n all
criminal prosecutions the accused shall have a speedy public trial by an
impartial jury. . . ." Tex. Const. art. I, § 10. Article 1, section 15 of the
Texas Constitution provides that "[t]he right of trial by jury shall remain
inviolate," and authorizes the legislature to "pass such laws as may be
needed to regulate the same, and to maintain its purity and efficiency." 
Tex. Const. art. I, § 15.
6. Appellant relies on the following cases: Abdnor v. State, 871
S.W.2d 726, 731 (Tex. Crim. App. 1994); Doyle v. State, 631 S.W.2d
732, 738 (Tex. Crim. App. 1980) (op. on reh'g); Ex Parte Clark, 597
S.W.2d 760, 761 (Tex. Crim. App. 1979) (habeas corpus proceeding);
Williams v. State, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977); and Harris
v. State, 522 S.W.2d 199, 202 (Tex. Crim. App. 1975).
7. In Abdnor, the defendant objected to the court's charge for its
failure to limit the jury's consideration of the extraneous offense, thus,
preserving error. See Abdnor, 871 S.W.2d at 730. Under article 36.19
and Almanza, the court found "some actual harm," and reversed and
remanded. See id. at 741.
8. We note, in this post-Almanza case, the court of criminal appeals
described the charge error as jeopardizing, not violating, a defendant's
right to jury trial. See Abdnor, 871 S.W.2d at 731.
9. The charge instructed the jury on self-defense and deadly force as
follows:


 Upon the law of self[-]defense, you are instructed that
a person is justified in using force against another when and
to the degree that he reasonably believes the force is
immediately necessary to protect himself against the other
person's use or attempted use of unlawful force.

 

 A person is justified in using deadly force against
another if he would be justified in using force against the
other in the first place, as above set out, and when he
reasonably believes that such deadly force is immediately
necessary to protect himself against the other person's use
or attempted use of unlawful deadly force, and if a
reasonable person in defendant's situation would not have
retreated.


 The charge also provided definitions for "reasonable belief" and
"deadly force."
10. Moreno, who was seated on the first floor under the balcony,
testified she heard shots, felt pain, and realized she had been shot in
the chest.
11. Defense witness, Reymundo Garza Robles, an acquaintance of
appellant, testified he knew Ledezma and had seen Ledezma with a
gun, a .45. Appellant claims this helps to corroborate his self-defense
testimony. However, Robles last saw Ledezma three years before the
shooting.
12. An improper cumulation order is, in essence, a void sentence;
therefore, the issue is properly before this Court because a defect
rendering the sentence void may be raised at any time. See LaPorte v.
State, 840 S.W.2d 412, 415 (Tex. Crim. App. (1992).