Affirmed and Memorandum Opinion filed April 17, 2003















Affirmed and
Memorandum Opinion filed April 17, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NOS. 14-02-00204-CR &

      14-02-00205-CR

____________

 

ERNEST LEE KING, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

_________________________________________________________________

 

On Appeal from
the 209th District Court

Harris County, Texas

Trial Court
Cause No. 864064 & 889816

 

_________________________________________________________________

 

M E M O R A
N D U M   O P I N I O N

            Appellant Ernest Lee King appeals
his two convictions for aggravated sexual assault of a child.  In twelve issues, he contends the trial court
erred in failing to properly instruct the jury, his trial counsel was
ineffective, and the evidence was legally and factually insufficient to support
his convictions.  We affirm.




                              I. 
Factual and Procedural Background

            The
complainant, C.R., was five years old at the time of the offenses alleged in
the indictments.  Appellant was the
boyfriend of C.R.’s mother.  In late October, 2000, C.R.’s
maternal grandmother, Janis Adetu, was driving C.R.,
and C.R.’s younger sister, P.K., to Houston after a
visit to Port Arthur, Texas.  During the trip, C.R. began to cry and told
her grandmother that appellant had sexually assaulted her.  C.R. recounted that the assault occurred on a
day she had stayed home from school. 
C.R. further explained that on that day, appellant, who had stayed at
home with her, put his penis in her mouth and in her vagina.  C.R. told her grandmother that appellant
threatened to do the same thing to her sister if she told anyone what had
happened.  After hearing this outcry, C.R.’s grandmother took her to a doctor at Texas Children’s
Hospital.

            At trial, C.R. testified that
appellant touched her anus with his penis, placed his penis in her vagina and
mouth, kissed her on the mouth with his tongue, and touched her chest with his
tongue.  C.R. testified those events took
place in her home on her mother’s bed. 

            Dr. Stephanie Kennebeck,
who examined C.R. on October
 22, 2000, in the emergency room at Texas Children’s Hospital,
testified that a vaginal examination revealed C.R.’s
hymen was not intact, which indicated there had been vaginal penetration.  Dr. Kennebeck also
read a portion of the medical report taken on the day C.R. was seen in the
hospital.  This report contained
statements that appellant had forced C.R. to watch “nasty” movies, had made her
touch his penis with her hand, had awakened her by touching her private parts
and  had told others “[h]e f----- [C.R.]
and [P.K.]”[1]  Dr. Kennebeck
reviewed previous medical records and determined that C.R. was examined in July
2000, for vaginal discharge and those records indicated C.R.’s
hymen was intact at that time.

            Two to three weeks prior to C.R.’s outcry, appellant attended a party at Janis Adetu’s home. 
Appellant told people at the party, “I’m f***ing
[C.R.].”  Kelly Jeb,
a Children’s Assessment Center (“CAC”) case worker testified that she talked
with appellant, and he admitted telling some family members at Adetu’s home that he had “messed with” C.R. and P.K.  Appellant, however, told Jeb
that what he said at the party was false and that he did not know what he was
saying at the time because he was under the influence of narcotics. 

            The State charged appellant with
aggravated sexual assault of a child, alleging appellant had placed his penis
in C.R.’s mouth and in her vagina.  See Tex. Pen. Code §§ 22.021(a)(1)(B) &
22.021(a)(2)(B).  The jury found
appellant guilty and assessed punishment at forty years’ confinement in each
case.  After denying the State’s motion
to cumulate the sentences in the two cases, the trial court sentenced appellant
to forty years’ confinement in the Institutional Division of the Texas
Department of Criminal Justice.  

            In twelve issues, appellant contends
the trial court erred in failing to give a reasonable-doubt instruction at the
punishment phase of trial and in failing to charge the jury at the
guilt-innocence phase on the limited use of extraneous offenses.  Appellant further contends that his trial
counsel rendered ineffective assistance and that the evidence is legally and
factually insufficient to support his convictions.




II.  Analysis and Discussion

            A.        Did the trial court err in failing to sua sponte give a
reasonable-doubt instruction during the punishment phase of trial?

            In his
first issue, appellant contends the trial court erred in failing to charge the
jury during the punishment phase that it could consider extraneous misconduct
in sentencing appellant only if the jury believed beyond a reasonable doubt
that appellant committed this extraneous misconduct.  Appellant points out evidence of the
following acts, alleged to be extraneous offenses, admitted at the
guilt-innocence phase of trial:

(1)       touching
C.R.’s breasts

            (2)       touching
C.R. between the legs

(3)       touching
C.R.’s buttocks

(4)       touching
C.R.’s buttocks with his penis

(5)       touching
C.R. between the legs with his penis

(6)       placing
appellant’s penis in C.R.’s vagina

(7)       touching
C.R.’s chest with appellant’s tongue

(8)       placing
appellant’s tongue in C.R.’s mouth while kissing

(9)       placing
appellant’s penis in C.R.’s mouth

(10)     making
C.R. watch “nasty” movies

(11)     making
C.R. touch appellant’s penis with her hand

(12)     awakening
C.R. by touching her private parts

(13)     a
statement that appellant said, “He f----- . . . [P.K.]”

 

            At the beginning of the punishment
phase of trial, the State re-offered all evidence from the guilt-innocence
phase of trial.  Therefore, appellant
argues, the trial court was obligated to instruct the jury sua sponte that the jury could not consider
evidence of the above conduct unless the jury determined beyond a reasonable
doubt that appellant committed the conduct.

            When reviewing alleged charge error,
we must determine, first, whether error actually exists in the charge, and,
second, whether sufficient harm resulted from the error to require reversal.  Hutch
v. State, 922 S.W.2d 166, 170–71 (Tex. Crim. App.
1996).  Before evidence of extraneous
misconduct may be considered in assessing punishment, the misconduct must be
proved beyond a reasonable doubt.  Tex. Code Crim.
Proc. art. 37.07, § 3(a)(1); see
also Huizar v. State, 12 S.W.3d 479, 483–84 (Tex.
Crim. App. 2000). 
As appellant correctly points out, a trial court is required to instruct
the jury sua sponte on
this burden of proof regarding extraneous misconduct.  See Huizar, 12 S.W.3d at 483–84. 

            Appellant first argues that, because
the two cases were tried together, the evidence that appellant placed his penis
in C.R.’s mouth is evidence of extraneous misconduct
at the punishment phase of the vaginal-penetration case, and the evidence that
appellant placed his penis in C.R.’s vagina is
evidence of extraneous misconduct at the punishment phase of the
oral-penetration case.  We disagree.  An extraneous offense is any act of
misconduct, whether resulting in prosecution or not, that is not shown in the
charging papers.  Rankin v. State, 953 S.W.2d 740, 741 (Tex. Crim.
App. 1996).  In a consolidated case,
evidence of the misconduct charged in one indictment is not evidence of
extraneous misconduct as to any of the indictments in the consolidated case.  See
Meador v. State, 941 S.W.2d 156, 162 (Tex. App.—Corpus Christi 1996, pet. ref’d).  Therefore,
the evidence of vaginal and oral penetration of C.R. by appellant was evidence
of misconduct shown in the charging papers and was not extraneous
misconduct.  See id.

            Furthermore, the first nine acts
listed by appellant as extraneous offenses were admissible as “same transaction
contextual evidence.”  See Santellan v.
State, 939 S.W.2d 155, 168 (Tex. Crim. App.
1997); Camacho  v. State, 864 S.W.2d 524, 531–32 (Tex. Crim. App. 1993). 
Such evidence imparts to the trier of fact
information essential to understand the context and circumstances of events
which, although legally separate offenses, are factually blended or interwoven.
 Camacho, 864 S.W.2d at 532.  Same transaction contextual evidence is
admissible to illuminate the nature of the crime alleged.  Id.  The first nine acts appellant cites came from
the complainant’s testimony concerning the acts charged in the
indictments.  No reasonable doubt
instruction is required for those acts, which are same transaction contextual
evidence.  See Garza v. State, 2 S.W.3d 331, 334–35 (Tex. App.—San Antonio
1999, pet. ref’d); Norrid v. State, 925 S.W.2d 342, 349 (Tex. App.—Fort Worth 1996, no
pet.).  Therefore, as to the first nine
items listed above, we hold that the trial court did not err when it failed to
give sua sponte a
reasonable-doubt jury instruction regarding extraneous misconduct evidence
during the punishment phase.

            The remaining four items (10 – 13)
were admitted only through an exhibit containing the medical report taken at
the time C.R. made the outcry.  After
reviewing the evidence, we conclude that these items are not same transaction
contextual evidence because they do not provide the jury information essential
to understand the context and circumstances of events that were factually
blended or interwoven with the events to which C.R. testified.  See
Camacho, 864 S.W.2d at 532.  Because
this evidence was admitted, the trial court erred in failing to sua sponte give
the jury a reasonable-doubt instruction. 
See Huizar, 12 S.W.3d at 483–84.  However, because appellant failed to object
to this error, he must show that it caused him to suffer egregious harm in
order to secure a reversal on this ground.  See Mann v. State, 964 S.W.2d 639, 641
(Tex. Crim. App. 1998); Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1985).  “Egregious harm” exists when the error was so
harmful as to deny the defendant “a fair and impartial trial.”  Tex.
Code Crim. Proc. art. 36.19; Barrera v. State, 982 S.W.2d 415, 417
(Tex. Crim. App. 1998).  To determine whether appellant suffered
egregious harm, we must view the error in light of the entire jury charge,
state of the evidence, argument of counsel, and any other relevant information
revealed by the record as a whole.  Mann, 964 S.W.2d at 641.[2]  Any harm suffered must be actual and not
merely theoretical.  Dickey v. State, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999).

            With regard items (10) – (12), there
was no conflicting evidence.  The
allegations that appellant forced C.R. to watch “nasty” movies, made her touch
his penis, and awakened her by touching her private parts were contained in the
medical report taken at the time C.R. made the outcry.  Appellant presented no contrary evidence.  With regard to the last item — the statement
in the report that appellant said, “He f----- . . . [P.K.],” appellant did not
dispute that he made the statement. 
Moreover, the CAC case worker testified that appellant said he told the
family members that he had been “messing with . . . [P.K.].”  Appellant also told the case worker that what
he had said was not true and that he did not know what he was saying when he
made that incriminating statement.  

            The range of punishment for both
offenses was life or any other term of imprisonment not more than 99 years or
less than 5 years.  Tex. Pen. Code §§ 12.32(a),
22.021(e).  In closing argument, the
State suggested that appellant’s case was neither a minimum case nor a maximum
case; rather, the State recommended punishment of “something right in the
middle, 30 years, 40 years at a minimum.” 
Appellant’s counsel asked for a five-year sentence.  The jury assessed punishment at forty years’
confinement.  Although appellant argues
this is per se egregious harm, he cites
no authority for this proposition, and there is authority to the contrary.  See Huizar v. State, 29 S.W.3d 249, 251 (Tex. App.—San
Antonio 2000, pet. ref’d) (op. on remand) (reasoning
that appellant did not suffer egregious harm from failure to give reasonable-doubt
instruction because sentence imposed was within range of punishment).  The State did not mention the last four items
(10 – 13) in its closing argument, and a forty-year sentence is well within the
range of punishment. 

            Although appellant contested his
guilt at trial, the record shows ample evidence of appellant’s guilt and little
doubt of appellant’s connection with the last four items.  On appeal, appellant asserts that because
there was evidence suggesting C.R.’s uncle also had
abused her, there is a possibility that some, if not all, of the extraneous
misconduct was committed by the uncle. 
Appellant also emphasizes the testimony of C.R.’s
mother that P.K. said C.R. was lying when she accused appellant of the sexual
assault and that C.R. previously had stated the uncle, not appellant, abused
her.  The evidence regarding these
assertions is weak.  C.R.’s
mother merely testified that P.K. said, “[C.R.], you’re lying.  You told mama that [the uncle] did it, not
[appellant].”  On cross-examination, C.R.
also testified that her uncle “did some bad things to [her].”  However, C.R. did not testify further in this
regard.  Despite her testimony concerning
P.K.’s statement about the uncle, C.R.’s
mother testified that her children (C.R. and P.K.) had never exhibited any
behavior that might make her suspicious of any problem with appellant or anybody else.  The uncle could have touched C.R. in an
inappropriate place.  C.R. could have
accused the uncle of doing so, and P.K. could have made the statement to which
her mother testified.  All of this could
be true, and that would not be inconsistent with appellant being guilty of the
charged offenses based on the strong evidence adduced by the State, including
multiple adult witnesses testifying that appellant himself stated he had sexual
intercourse with C.R.  Furthermore,
appellant points to no evidence indicating that the uncle abused P.K.  Appellant has not set forth authority,
evidence, or reasoning suggesting that, if the trial court had given a reasonable-doubt
instruction, the jury likely would have imposed a lighter sentence.  Because Almanza requires a showing of
actual, not theoretical, harm, we conclude that the record does not show
egregious harm.  See Huizar, 29 S.W.3d at 251; Gholson v. State, 5 S.W.3d 266, 271
(Tex. App.—Houston [14th Dist.] 1999, pet. ref’d).  Therefore, we overrule appellant’s first
issue.

B.        Did the
trial court err in failing to include a limiting instruction in the jury charge
during the guilt-innocence phase of trial?

            In his third issue, appellant
contends the trial court erred in failing to charge the jury during the
guilt-innocence phase that it could only consider evidence of other crimes,
wrongs, or acts committed by appellant for their bearing on appellant’s state of
mind and the previous and subsequent relationship between appellant and
C.R.  Though on appeal appellant
identifies thirteen acts he contends the trial court erroneously admitted as
extraneous offenses at the guilt-innocence phase of trial, at the time this
evidence was introduced, appellant neither objected to its admission nor
requested a limiting instruction. 
Therefore, the evidence was admitted, not for the limited purpose stated
by appellant above, but for all purposes. 
The party opposing the admission of evidence bears the burden of
requesting a limiting instruction at the first opportunity to do so.  Hammock v. State, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001).  If
a party does not request a limiting instruction at that time, and if the
evidence is admitted without a limiting instruction, then the evidence becomes
part of the general evidence and may be used for all purposes.  Id.

            Appellant did not request a limiting
instruction at the first opportunity, and thus the jury was free to consider
the evidence for all purposes at the time it was admitted.  Therefore, a limiting instruction in the jury
charge was not within the applicable law of the case.  See id.  “Allowing the jury to consider evidence for
all purposes and then telling them to consider that same evidence for a limited
purpose only is asking a jury to do the impossible.”  Id. at
894.  Jury instructions, if requested,
should be given when the evidence is admitted and then again in the final jury
charge.  Huizar, 12
S.W.3d at 482–83.  Because appellant
failed to request a limiting instruction when he first had the opportunity to
do so and thus evidence of the extraneous acts was admitted for all purposes, a
limiting instruction in the charge was not warranted.  See
Hammock, 46 S.W.3d at 895.  Accordingly, we overrule appellant’s third
issue.

C.        Did
appellant’s trial counsel render ineffective assistance?

            In his second, fourth, fifth, sixth,
seventh, and eighth issues, appellant contends he was denied his sixth
amendment right to effective assistance of counsel.  Specifically, appellant contends his trial
counsel was ineffective because he failed to object to the introduction of
extraneous offenses at both the guilt-innocence and punishment phases of trial
and failed to request appropriate jury instructions with regard to those
extraneous acts.  Appellant further
complains of his counsel’s failure to object to the prosecutor’s questioning of
certain witnesses.

            Both the United
 States and the Texas Constitutions
guarantee an accused the right to assistance of counsel.  U. S.
Const. amend. VI; Tex. Const.
art. I, §10; Tex. Code Crim. Proc. art. 1.05.  This right necessarily includes the right to
reasonably effective assistance of counsel. 
Strickland v. Washington, 466 U.S. 668, 686,
104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Ex parte Gonzales,
945 S.W.2d 830, 835 (Tex. Crim. App. 1997).  To establish ineffective assistance of
counsel, appellant must show: (1) that trial counsel’s representation fell
below an objective standard of reasonableness under prevailing professional
norms; and (2) that there is a “reasonable probability” the result of the
proceeding would have been different but for trial counsel’s unprofessional
errors.  Strickland, 466 U.S. at 688–94.
Appellant must establish both points by a preponderance of the evidence to show
ineffective assistance of counsel.  Jackson v. State, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).

            In assessing appellant’s claims, we
apply a strong presumption that trial counsel was competent.  Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999). 
We presume counsel’s actions and decisions were reasonably professional
and were motivated by sound trial strategy. 
Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). 
Appellant has the burden to rebut this presumption by presenting
evidence that shows why trial counsel did what he did.  See id.  The record in this case contains no evidence
of the reasoning or strategy underlying appellant’s trial counsel’s
actions.  From this record, one could
assume there were legitimate and professionally sound reasons for trial
counsel’s conduct or one could speculate that there were not.  As an appellate court, we cannot engage in
speculation.  See id.  Because appellant
has failed to demonstrate in the record that his trial counsel was ineffective
under the first prong of the Strickland
test, we overrule appellant’s second, fourth, fifth, sixth, seventh, and eighth
issues.

D.        Was the evidence legally and factually
sufficient to support the convictions?

 

            In his last four issues, appellant
contends the evidence is legally and factually insufficient to support his
convictions.  In evaluating a
legal-sufficiency challenge, we view the evidence in the light most favorable
to the verdict.  Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). 
The issue on appeal is not whether we, as a court, believe the State’s
evidence or believe that appellant’s evidence outweighs the State’s evidence.  Wicker v. State, 667 S.W.2d 137, 143 (Tex.
Crim. App. 1984). 
The verdict may not be overturned unless it is irrational or unsupported
by proof beyond a reasonable doubt.  Matson v. State, 819 S.W.2d 839, 846 (Tex.
Crim. App. 1991). 


            A person commits aggravated sexual
assault of a child if the person intentionally or knowingly (i) causes the penetration of the anus or female sexual
organ of a child by any means; (ii) causes the penetration of the mouth of a
child by the sexual organ of the actor; (iii) causes the sexual organ of a
child to contact or penetrate the mouth, anus, or sexual organ of another
person, including the actor; (iv) causes the anus of a child to contact the
anus, mouth, or sexual organ of another person, including the actor; or (v)
causes the mouth of a child to contact the anus or sexual organ of another person,
including the actor; and the child is younger than fourteen years of age and
not the spouse of the defendant.  Tex. Pen. Code §§ 22.021(a)(1)(B) & 22.021(a)(2)(B).

            C.R. testified, using anatomically
correct dolls, that appellant penetrated her vagina with his penis.  She further testified that appellant put his
penis in her mouth and when he took it out, “something yellow” came out of his
penis, went over her head, and landed on the bed.  C.R. further testified that appellant kissed
her on the mouth with his tongue and touched her chest with his tongue.  The testimony of a victim, standing alone,
even when the victim is a child, is legally sufficient to support a conviction
for sexual assault.  Jensen v. State, 66 S.W.3d 528, 534 (Tex.
App.—Houston [14th
Dist.] 2002, pet. stricken).

            Moreover, Janis Adetu,
the outcry witness, corroborated C.R.’s testimony
concerning the outcry.  Adetu also testified appellant told family members, “I’m
f***ing [C.R.].” 
Dr. Kennebeck, who examined C.R. after her
outcry, found C.R.’s hymen was not intact.  Review of medical records revealed that C.R.’s hymen was intact three months before the incidents
involving appellant.  From this evidence,
a rational trier of fact could have concluded, beyond
a reasonable doubt, that appellant committed the offenses charged.  We overrule appellant’s ninth and eleventh
issues challenging the legal sufficiency of the evidence.

            In his tenth and twelfth issues,
appellant contends the evidence is factually insufficient to support his convictions.  When evaluating a challenge to the factual
sufficiency of the evidence, we view all the evidence without the prism of “in
the light most favorable to the prosecution” and set aside the verdict only if
it is “so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust.”  Johnson v. State, 23 S.W.3d 1, 6–7 (Tex. Crim. App. 2000). 
This concept embraces both “formulations utilized in civil
jurisprudence, i.e., that evidence can be factually insufficient if (1) it is
so weak as to be clearly wrong and manifestly unjust; or (2) the adverse
finding is against the great weight and preponderance of the available
evidence.”  Id. at
11.  Under this second formulation, the
court essentially compares the evidence which tends to prove the existence of a
fact with the evidence that tends to disprove that fact.  Jones
v. State, 944 S.W.2d 642, 647 (Tex. Crim. App.
1996).  In conducting the
factual-sufficiency review, we must employ appropriate deference so that we do
not substitute our judgment for that of the fact finder.  Id. at
648.  Our evaluation should not intrude
upon the fact finder’s role as the sole judge of the weight and credibility
given to any witness’s testimony.  Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

            Appellant presented the testimony of
Latonya Knight, C.R.’s
mother. Knight testified that while in the emergency room with her daughters
the night of the outcry, C.R. began to tell her what had happened with
appellant.  P.K., C.R.’s
younger sister, interrupted C.R. and said C.R. was lying because C.R.
previously had stated that the girls’ uncle, not appellant, had assaulted
her.  Knight further testified that
appellant said he had sexual intercourse with C.R., but that this statement did
not raise any alarm for her at all because appellant was not acting like
himself when he made the statement.

            The jury, as the trier
of fact, was the sole judge of the credibility of witnesses and of the strength
of the evidence.  Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim.
App. 1999). The jury was free to believe or disbelieve any portion of the
witnesses’ testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  It
is apparent from its verdict, that the jury chose to believe the State’s
witnesses.  Having reviewed all of the
evidence, we find it is not so weak as to render the jury’s verdict manifestly
unjust, nor is it greatly outweighed by contrary evidence.  Accordingly, we overrule appellant’s tenth
and twelfth issues.

            Having overruled all of appellant’s
issues, we affirm the trial court’s judgment.

 

 

 

                                                                                    

                                                                        /s/        Kem Thompson
Frost

                                                                                    Justice

 

 

Judgment
rendered and Memorandum Opinion filed April 17, 2003.

Panel
consists of Justices Yates, Hudson, and Frost.

Do Not
Publish — Tex. R. App. P.
47.2(b).

 











            [1]  The report contained the word “f-----” just as it
appears in this sentence.  In this
opinion, we use asterisks in reference to this vulgar slang term that means to
have sexual intercourse with another. 
The actual reporter’s record contains the complete word. 





            [2]  Compare
Brown v. State, 45 S.W.3d 228, 231–32
(Tex. App.—Fort Worth 2001, pet. ref’d) (finding that
appellant was not egregiously harmed by the trial court’s failure to give a
reasonable doubt instruction because there was little doubt of appellant’s
connection with most extraneous offenses and the jury gave appellant probation
for one offense and assessed punishment at the low end for his other offense), Gholson v. State, 5 S.W.3d 266, 271
(Tex. App.—Houston [14th Dist.] 1999, pet. ref’d)
(reasoning that appellant did not show egregious harm because the jury had a
proper instruction on reasonable doubt regarding unadjudicated
acts at the guilt stage and the punishment charge was given to the jury on the
same day as the guilt charge, the State proved the extraneous offenses with uncontroverted evidence, appellant did not contend on
appeal that if a proper instruction had been given, the evidence was
insufficient to prove beyond a reasonable doubt he committed the extraneous
offense, nor did appellant submit evidence that, if he had requested the
reasonable doubt instruction, the jury would have disregarded the extraneous
offense evidence), and Fails v. State,
999 S.W.2d 144, 148 (Tex. App.—Dallas 1999, pet. ref’d)
(finding appellant was not egregiously harmed because, although he denied
hitting the victim, he admitted to pleading guilty to the probated extraneous
offense), with Ellison v. State, — S.W.3d —, 2003 WL 45332, at *2–*3 (Tex.
App.—Texarkana, Jan. 8, 2003, no pet. h.) (holding that appellant was
egregiously harmed because his sentence could have been substantially affected
by evidence that he committed hate crimes).